UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| ROBIN SHAW-HUGHES, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO. 1:17-cv-00161-SLC |
|  | ) |  |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Nancy A. Berryhill, Acting Commissioner of Social Security,* | ) ) ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff Robin Shaw-Hughes appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[1] (DE 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Shaw-Hughes applied for SSI in December 2013, alleging disability as of February 1, 1997, which she later amended to October 30, 2013. (DE 9 Administrative Record ("AR") 12, 240-51). The Commissioner denied Shaw-Hughes's application initially and upon reconsideration. (AR 119, 132). A hearing was held on September 9, 2015, before Administrative Law Judge Daniel Balutis (the "ALJ"), at which Shaw-Hughes's attorney and a vocational expert appeared, but Shaw-Hughes failed to appear. (AR 89-107). A second hearing was held on January 17, 2016, before the ALJ at which Shaw-Hughes, who was represented by

---

[1] All parties have consented to the Magistrate Judge. (DE 12); *see* 28 U.S.C. § 636(c).

an attorney, and a vocational expert testified. (AR 30-88). On February 5, 2016, the ALJ rendered an unfavorable decision to Shaw-Hughes, concluding that she was not disabled because she could perform a significant number of unskilled, light work jobs in the economy despite the limitations caused by her impairments. (AR 12-23). The Appeals Council denied Shaw-Hughes's request for review (AR 1-5), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

Shaw-Hughes filed a complaint with this Court on April 17, 2017, seeking relief from the Commissioner's decision. (DE 1). Shaw-Hughes asserts that the ALJ erred by: (1) failing to request a consultative examination to fully and fairly develop the record regarding her physical impairments; and (2) failing to fully credit the opinion of Dr. Jay Patel, her treating psychiatrist. (DE 13 at 12-17).

At the time of the ALJ's decision, Shaw-Hughes was 48 years old (AR 23, 240); had completed the 11th grade (AR 265); and had past work experience as a clerical intern, a dishwasher, a production worker, and a telemarketer (AR 265, 348, 352). At the time of the hearing, Shaw Hughes was five feet, three inches tall, and weighed 164 pounds. (AR 37). In her SSI application, Shaw-Hughes alleged disability due to a schizoaffective disorder, depression, and nerve damage in her neck. (AR 264).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3). The Court's task is limited to determining whether

the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id.* Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id.*

### III. ANALYSIS

#### A. The Law

Under the Act, a plaintiff is entitled to SSI if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

In determining whether Shaw-Hughes is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required him to assess the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant

3

has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[2] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id.* at 885-86.

## B. The ALJ's Decision

On February 5, 2016, the ALJ issued the decision that ultimately became the Commissioner's final decision. (AR 12-23). He found at step one of the five-step analysis that while Shaw-Hughes had worked briefly as a housekeeper in August 2015 and as a bell ringer in November 2015, she had not engaged in substantial gainful activity after her application date of October 30, 2013. (AR 14). At step two, the ALJ determined that Shaw-Hughes had the following severe impairments: degenerative disc disease, cervical and lumbar spines; obesity; schizoaffective disorder; alcohol dependence; and cocaine dependence. (AR 14). At step three, the ALJ found that Shaw-Hughes's impairment or combination of impairments were not severe enough to meet a listing. (AR 15).

---

[2] Before performing steps four and five, the ALJ must determine the claimant's residual functional capaicty ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 416.920(e), 416.945. The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 416.920(e), 416.945(a)(5).

4

Before proceeding to step four, the ALJ concluded that Shaw-Hughes's symptom testimony was not entirely credible (AR 19) and assigned the following RFC:

> [T]he claimant has the [RFC] to perform light work . . . except she can frequently lift/carry 10 pounds; occasionally lift/carry 20 pounds; sit 6 hours out of an 8-hour workday, standing for 5 minutes after every 30 minute period of sitting; stand 6 hours out of an 8-hour workday, sitting for 5 minutes after every 30 minute period of standing; walk 6 hours out of an 8-hour workday, sitting for 5 minutes after every 30 minute period of walking; and push/pull as shown for lift/carry. The claimant can frequently handle with the left and with the right upper extremity; can frequently finger with the left and with the right hands; can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. When understanding, remembering, and carrying out instructions, the claimant is limited to simple, routine tasks; and judgment is limited to simple work-related decisions. The claimant can frequently respond appropriately to supervisors, co-workers, and the public. The claimant can deal with changes in the work setting when such changes involve no more than simple work-related decisions. Normal breaks during an 8-hour workday would accommodate the claimant's time off task.

(AR 17-18). At step four, the ALJ concluded that Shaw-Hughes could not perform any of her past relevant work. (AR 21). At step five, based on the assigned RFC and the vocational expert's testimony, the ALJ concluded that a hypothetical individual with Shaw-Hughes's RFC, experience, and education could perform a significant number of unskilled, light occupations in the economy, including a small products assembler, an electronics worker, and an electrical accessories assembler. (AR 22). Therefore, Shaw-Hughes's claim for SSI was denied. (AR 23).

### C. *Requesting a Consultative Examination*

Shaw-Hughes first argues that the ALJ erred by failing to request a consultative examination to fully and fairly develop the record as to her physical impairments relating to her cervical MRI on March 14, 2014, and her surgery for compressed nerve roots in her cervical

5

spine on April 29, 2014. In tandem, Shaw-Hughes contends that the ALJ erred by affording great weight to the opinions of the state agency physicians, Dr. M. Ruiz and Dr. J.V. Corcoran, who reviewed her record and issued their opinions on February 19, 2014, and April 3, 2014, respectively, without knowledge of her cervical MRI and subsequent cervical surgery. (AR 21, 113-14, 125-27).

A claimant has the initial duty to bring forth evidence supporting a finding of disability. 20 C.F.R. § 416.912(a); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). When a claimant is represented by counsel at the administrative hearing, the ALJ is entitled to presume that the claimant has advanced her best grounds for recovery. *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir. 1988); *see Nicholson v. Astrue*, 341 F. App'x 248, 254 (7th Cir. 2009) ("The degree of the ALJ's responsibility to take the initiative is influenced, if not entirely dictated, by the presence or absence of counsel for the claimant."). The ALJ has the discretion then to determine whether the evidence put forth by the claimant is adequate to decide the issue of disability or whether further consideration by a medical expert is required. *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007). "[A] consultative examination may be ordered when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011) (second alteration in original) (citations and internal quotation marks omitted); *see Skinner*, 478 F.3d at 844 ("The ALJ is not *required* to order such [consultative] examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient." (citing 20 C.F.R. §§ 416.912(f), 416.917)); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

"[B]ecause it is always possible to identify one more test or examination an ALJ might

have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citation omitted); *see Poyck*, 414 F. App'x at 861 ("This court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including additional consultative examinations) are needed in order to accomplish that goal." (citations omitted)); *Nicholson*, 341 F. App'x at 254 ("We do not doubt that an additional medical opinion at the time of the hearing would have been helpful (one way or the other), but the question before us is whether the ALJ's decision to rest on the record that he had was an abuse of discretion. We think not."). "Particularly in counseled cases, the burden is on the claimant to introduce some objective evidence that further development of the record is required." *Poyck*, 414 F. App'x at 861 (citations omitted).

Here, Shaw-Hughes contends that a consultative physical examination was necessary because "there were no opinions in the record concerning [her] physical limitations caused by degenerative disc disease in her cervical spine." (DE 13 at 12). She emphasizes that Dr. Ruiz and Dr. Corcoran reviewed only an X-ray and an MRI of her lumbar spine (*see* AR 113-14, 126), and that the ALJ cannot rely on the state agency doctors' opinions because they did not have the entire record to consider.

Shaw-Hughes's argument is unpersuasive. The ALJ's conclusion is supported not only by the opinions of Dr. Ruiz and Dr. Corcoran, but also by the records of Shaw-Hughes's treating providers. In that regard, the ALJ observed that at Shaw-Hughes's visits to Matthew 25 in April, June, and July 2015, the objective findings concerning her extremities were all normal. (AR 695, 698, 704). The ALJ further considered that while Shaw-Hughes did complain of some hand

7

numbness to Matthew 25 in April 2015 (AR 704-05), the ALJ questioned the reliability of Shaw-Hughes's report because Matthew 25 did not document any abnormalities in the objective findings concerning her upper extremities (AR 704-05), and because Shaw-Hughes testified at the hearing that she did not have any problems using her hands (AR 56). The ALJ further observed that while Shaw-Hughes alleged that she experiences pain in her extremities, there is no evidence that she inquired about or received pain medication from Matthew 25. (AR 19; *see* AR 49, 694-709).

The ALJ also considered that while Shaw-Hughes had left arm and hand numbness prior to April 2014 due to nerve root compression in her cervical spine, the cervical surgery resolved this nerve root compression in a period less than 12 months. (AR 21 (citing AR 821-65)). In August 2014, several months after her cervical surgery, Dr. Joshua Winters of Fort Wayne Orthopedics, L.L.C., documented that Shaw-Hughes was "feeling pretty good"; that she was not taking anything for neck pain; and that her sensation, strength, and reflexes in her extremities were normal. (AR 821). Dr. Winters did not assign Shaw-Hughes any limitations, but rather, instructed her to "continue with her regular activities as tolerated." (AR 822).

"It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [her] claim of disability." *Scheck*, 357 F.3d at 702 (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). Here, Shaw-Hughes's attempt to shift that burden to the Commissioner is unavailing; in short, Shaw-Hughes has simply failed to carry her burden to produce a medical source opinion evidencing limitations in excess of those afforded by the ALJ. *See Poyck*, 414 F. App'x at 861 (stating that the claimant bears the burden to produce some objective evidence that further development of the record is required); *Flener*

8

*ex rel. Flener*, 361 F.3d at 448 ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citing 20 C.F.R. § 416.912(c)).

"When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making [her] strongest case for benefits." *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987). Shaw-Hughes was represented by counsel at the hearing, and counsel did not suggest that a medical expert or additional evidence was necessary to decide her claim. (AR 33-35, 86-87; *see also* AR 353-56); *see Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) (stating that a claimant who is represented by counsel is presumed to put on her best case, and counsel's failure to request an additional medical opinion supports the inference that it would not have made a difference).

In sum, the ALJ determined that the evidence before him was adequate to determine Shaw-Hughes's physical RFC, and in light of the record presented, the ALJ did not abuse his discretion in doing so. *See Nicholson*, 341 F. App'x at 254 (reviewing the ALJ's decision not to order an additional medical evaluation for an abuse of discretion). Accordingly, a remand of the ALJ's decision for purposes of obtaining a consultative examination is not necessary.

### D. The Assigned RFC

Shaw-Hughes also argues that the RFC assigned by the ALJ is not supported by substantial evidence. More particularly, Shaw-Hughes faults the ALJ for not fully adopting the opinion of Dr. Patel, her treating psychiatrist, in the RFC. Shaw-Hughes's challenge to the ALJ's consideration of Dr. Patel's opinion, however, is unsuccessful.

9

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374284 ,at *1; *see* 20 C.F.R. § 416.945(a)(1) ("Your [RFC] is the most you can still do despite your limitations."); *see also Young v. Barnhart*, 362 F.3d 995, 1000-02 (7th Cir. 2004) (citations omitted). The RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 416.945. Therefore, when determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. § 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

The Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 416.927(c)(2). However, this principle is not absolute, as "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in

the record."[3]  *Clifford*, 227 F.3d at 870 (citing 20 C.F.R. 404.1527(d)(2)); *see Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002).  The Commissioner must always give good reasons for the weight ultimately applied to the treating source's opinion.  *Clifford*, 227 F.3d at 870; 20 C.F.R. § 416.927(c)(2).

Here, Shaw-Hughes participated in mental health treatment at Park Center from May 2013 to June 2014.  (AR 470-553, 712-754).  During that time, she inconsistently participated in treatment and made limited progress.  (AR 742).  She was discharged from Park Center in January 2015 because she had not been there in seven months.  (AR 728).  On July 9, 2015, Shaw-Hughes returned to Park Center and established treatment with Dr. Patel.  (AR 712-20).  She reported that she had been sober for two years, had not taken her medication (Latuda) for one year, thought that her symptoms were returning, and was applying for disability and her lawyer had asked her to see a doctor.  (AR 713).  Dr. Patel diagnosed her with cocaine dependence, a schizoaffective disorder, and alcohol dependence, and assigned her a Global Assessment of Functioning ("GAF") score of 52.[4]  (AR 712).  A mental status examination was unremarkable other than a blunted affect, a depressed and anxious mood, and that she sometimes

---

[3] In the event the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the Commissioner must apply the following factors to determine the proper weight to give the opinion:  (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner.  *See Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); 20 C.F.R. § 416.927(c).

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning.  American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 32-34 (4th ed., Text Rev. 2000).  A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  *Id*.  "The American Psychiatric Association no longer uses the GAF as a metric."  *Spencer v. Colvin*, No. 13-cv-1487, 2015 WL 684545, at *17 n.5 (C.D. Ill. Feb. 17, 2015) (citing American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)).  However, Dr. Patel used a GAF score in assessing Shaw-Hughes, so it is relevant to the ALJ's decision.  *See id*. (citing *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)).

hears a radio when there is no radio. (AR 714-15). Dr. Patel indicated that she was symptomatic but stable. (AR 716).

Shaw-Hughes saw Dr. Patel again for medication management on November 17, 2015. (AR 866-73). She reported that the Latuda was working fine with no side effects, and that she "feels good" when taking it. (AR 866). A mental status examination was unremarkable (congruent affect, euthymic mood, and normal perception), and Dr. Patel indicated that she was symptomatic but stable. (AR 869).

On October 9, 2015, Dr. Patel completed a questionnaire that assessed Shaw-Hughes's mental ability to do work-related activities. (AR 816-19). In the questionnaire, Dr. Patel indicated that Shaw-Hughes had: (1) a "good" ability to follow work rules; interact with co-workers, supervisors, and the public; understand, remember, and carry out simple or even complex job instructions; maintain personal appearance; and behave in an emotionally stable manner; (2) a "fair" ability to understand, remember, and carry out detailed job instructions; relate predictably in social situations; and demonstrate reliability; and (3) a "poor" ability to use judgment; deal with work stresses; function independently; and maintain attention and concentration.[5] (AR 816-18). Dr. Patel further indicated that Shaw-Hughes had a "slight loss" in sustaining basic work-related activities during a 40-hour workweek, including making simple work-related decisions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and responding appropriately to supervisors and co-workers. (AR 818-19). Finally, Dr. Patel indicated that Shaw-Hughes's mental symptoms would cause her to fail to

---

[5] The questionnaire defined "good" as "limited, but satisfactory"; "fair" as "seriously limited, but not precluded"; and "poor" as "[n]o useful ability to function." (AR 816).

complete tasks in a timely manner for one or more hours in an eight-hour workday, that she would be absent from work at least four days per month; and that she was not capable of sustaining competitive employment. (AR 819).

The ALJ expressly considered Dr. Patel's treatment notes and the questionnaire completed on October 19, 2015, crediting some of Dr. Patel's opinions in the questionnaire but not others. (AR 20-21). The ALJ explained that some of Dr. Patel's opinions lacked supporting evidence and an explanation, and that the opinions were internally inconsistent and inconsistent with the medical evidence. (AR 20-21). Specifically, the ALJ observed that Dr. Patel had diagnosed Shaw-Hughes with a schizoaffective disorder (AR 15), that Shaw-Hughes had no memory problems (AR 17), and that her lack of memory problems was consistent with Dr. Patel's opinion that she had a good ability to understand, remember, and carry-out simple or even complex instructions (AR 20). Additionally, the ALJ stated:

> Any problems with concentration, persistence, or pace which the claimant has, are incorporated into the RFC by limiting the claimant to simple, routine tasks, while judgments are limited to simple work-related decisions. This is in large part supported by the questionnaire completed by Dr. Patel which indicates the claimant is able to understand, remember, and carry out simple instructions, and has only a slight loss of ability to make simple work-related decisions and respond appropriately to usual work situations. Dr. Patel's questionnaire also supports the conclusion in the RFC that the claimant can frequently respond appropriately to supervisors, co-workers, and the public, as there is only a slight loss of ability in these areas according to the psychiatrist.
>
> Inexplicably, though, Dr. Patel has included in his questionnaire the comments that the claimant would fail to complete tasks, and would miss 4 days of work per [month]. These opinions are given no explanation by the psychiatrist, nor are they consistent with the medical evidence, nor are they even consistent with other opinions expressed in the questionnaire by Dr. Patel. They are given no weight.

13

(AR 21 (internal citations omitted)).

Shaw-Hughes challenges the ALJ's rejection of Dr. Patel's opinions that she would fail to complete tasks in a timely manner and would miss four days of work per month, contending that the record supports both of these limitations. Shaw-Hughes points to her frequent cancellation or no shows at various health care appointments as evidence of her expected absenteeism. (DE 13 at 15 (citing AR 470, 509, 525, 527, 531, 880, 606, 621, 630, 728, 880)). She also cites a function report completed by her friend, which states that she has difficulty completing tasks, and treatment notes that mention her reported problems with concentration and focus, lack of motivation, and flight of ideas. (DE 13 at 16 (citing AR 282, 470, 474, 521, 713)). Additionally, Shaw-Hughes argues that Dr. Patel's rating of "poor" in the categories of functioning independently, maintaining concentration and attention, and demonstrating reliability is consistent with his opinion that she would fail to complete tasks in a timely manner and would miss four days of work per month. (DE 13 at 16).

But Shaw-Hughes's argument amounts to no more than a plea to reweigh Dr. Patel's opinions—a task which the Court cannot do. *See Clifford*, 227 F.3d at 869 (recalling that courts "do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner" (citations omitted)). The ALJ adequately articulated why he assigned no weight to Dr. Patel's opinion that Shaw-Hughes would not complete tasks in a timely manner and would miss four days of work a month, and the ALJ's rationale for doing so is supported by the record. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (stating that the ALJ must sufficiently articulate his assessment of the evidence to assure the court that he considered the important evidence and to enable the court to trace the

14

path of his reasoning).

First, Dr. Patel did not cite any objective evidence to support these more severe limitations, and his treatment notes reflect essentially normal mental status findings. (*See* AR 867-68); 20 C.F.R. § 416.927(c)(3) (stating that the more a medical source presents relevant evidence, the more weight the ALJ will give the opinion). Nor did Dr. Patel offer any explanation why he offered these more severe limitations. *See* 20 C.F.R. § 416.927(c)(3) (stating that the better an explanation a medical source provides for his opinion, the more weight the ALJ will give the opinion).

Second, the ALJ reasonably concluded that Dr. Patel's questionnaire was internally inconsistent. Shaw-Hughes attempts to square Dr. Patel's opinion that she had a "good" ability to understand, remember, and carry out simple and even complex job instructions, with his opinion that she is unable to complete tasks in a timely manner, but the Court is not persuaded. Furthermore, Dr. Patel indicated that Shaw-Hughes had only a "slight loss" in the category of sustaining basic work-related tasks for eight hours a day, five days a week, which is also inconsistent with Dr. Patel's opinion that Shaw-Hughes is unable to complete tasks in a timely manner and would miss more than four days of work a month. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (reviewing an ALJ's decision requires that the Court "give the opinion a commonsensical reading rather than nitpicking at it" (citation omitted)).

Perhaps even more significantly, the more severe limitations in Dr. Patel's questionnaire are inconsistent with the medical evidence documented in his own treatment records, which reflect essentially benign mental findings. (*See* AR 867-68). Accordingly, the Court cannot fault the ALJ for viewing a portion of Dr. Patel's opinions as internally inconsistent, and as such,

15

worthy of less weight. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (noting that an ALJ can discount a physician's opinion if it is internally inconsistent); *Clifford*, 227 F.3d at 871 (explaining that medical evidence may be discounted if it is internally inconsistent).

In sum, "[a]n ALJ may discount a treating physician's medical opinion if it is . . . internally inconsistent, as long as he minimally articulate[s] his reasons for crediting or rejecting evidence of disability." *Skarbek*, 390 F.3d at 503 (second alteration in original) (citation omitted). Here, the ALJ sufficiently articulated his reasoning for crediting some portions of Dr. Patel's questionnaire, while rejecting other portions, and his rationale is adequately supported by the record. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (observing that in assigning an RFC, "an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" (citation omitted)); 20 C.F.R. § 416.946(c); SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996). Consequently, the ALJ's evaluation of Dr. Patel's opinion does not require a remand of the Commissioner's final decision.

### IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Shaw-Hughes.

SO ORDERED.

Entered this 18th day of July 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge